445 F.2d 144
 Vincent R. HILL, Appellant,
v.
Jay G. PHILPOTT, District Director of Internal Revenue, Thomas Vicars, Le Roy Wise, John Hohmann, Ralph Ranaletta, Frank E. Strang, and Other Unknown Agents of Internal Revenue Service, Appellees.
 No. 18487.
 United States Court of Appeals, Seventh Circuit.
 May 17, 1971.
 Rehearing Denied July 29, 1971.
 
 1
 Robert G. Heckenkamp, Heckenkamp & Fuiten, Springfield, Ill., for appellant.
 
 
 2
 Johnnie M. Walters, Asst. Atty. Gen., Vincent P. Russo, Atty., Dept. of Justice, Washington, D. C., Donald B. Mackay, U. S. Atty., Springfield, Ill., Joseph M. Howard, Atty., Dept. of Justice, Washington, D. C., Frank J. Violanti, U. S. Atty., Springfield, Ill., for appellees.
 
 
 3
 Before DUFFY, Senior Circuit Judge, FAIRCHILD, Circuit Judge, and CAMPBELL, Senior District Judge.*
 
 
 4
 CAMPBELL, Senior District Judge.
 
 
 5
 This case concerns the extent to which a citizen's personal books and records are protected by the Fourth and Fifth Amendments against seizure by the government. Petitioner-Appellant, Dr. Vincent R. Hill, commenced this action in the district court by seeking a rule to show cause why certain properties seized pursuant to search warrants should not be returned and suppressed on the grounds that the seizure was in violation of his constitutional rights under the Fourth and Fifth Amendments. The district court denied the petition and refused the request for the return or suppression of the property. Its memorandum opinion is reported as United States v. Premises, 801 North Seventh Street, 310 F.Supp. 1316 (S.D.Ill.1970). This appeal followed.
 
 
 6
 The facts giving rise to this somewhat unusual proceeding are as follows. Dr. Hill, a licensed physician and surgeon, has been engaged in the practice of medicine in Springfield, Illinois for more than twenty years. On February 19, 1970, a special agent of the Intelligence Division of the Internal Revenue Service presented to the district court applications for search warrants directed against Dr. Hill's residence and office. In support of the applications for warrants, the special agent presented the affidavits of four former employees of Dr. Hill detailing his office procedures which indicated that the financial records relating to certain patients were kept separate from the general patient and financial records. The records relating to these patients were called "Red Letter Folders." One former employee stated in her affidavit that the employees were directed, "that if any tax man visited the office to make an investigation, one employee should occupy him in the receptionist's area and the other employee was to incinerate all of the `red letter folders' contained in the office in the automatic incinerator."
 
 
 7
 An affidavit of a "Red Letter" patient of Dr. Hill stated that at least one or two checks tendered to Dr. Hill for visits showed a second endorsement by Myers Brothers Department Store in Springfield. The affidavit of the special agent concluded, that based on his experience there was probable cause to believe that the actions and practices described by the former employees of Dr. Hill, "were analogous with conduct such as: (1) keeping a double set of books, (2) making alterations, (3) concealing sources of income, and (4) destroying or proposing to destroy records in furtherance of concealment, and are designed to prevent or controvert discovery of the omission." The affidavit further concluded, "All of such acts and conduct constituted an attempt to evade or defeat income tax laws in violation of Title 26, U.S.C., § 7201 * * *".
 
 
 8
 The district court found that the affidavits established "probable cause" for the issuance of the warrants and, "also established that the papers, books, records, and documents sought to be seized were the instrumentalities by which the crimes of wilfully attempted tax evasion had been and were then being committed, as well as evidence of the crimes of wilfully attempted tax evasion." 310 F. Supp. at 1320. Two search warrants directed to Dr. Hill's residence and office were issued. The warrants described the objects of the search in terms which included most if not all of the financial and medical records maintained by Dr. Hill. The property to be seized as recited in the warrants is set forth in the margin.[1]
 
 
 9
 Agents of the I.R.S. searched the office and home of Dr. Hill that same day and seized and removed thirty-five (35) cardboard cartons comprising what the agents described as a "truckload of books, records and papers." The next day Dr. Hill presented his petition for an order directing that the property seized be returned and suppressed on the grounds that the seizure was in violation of the petitioner's constitutional rights, particularly under the Fourth and Fifth Amendments. No criminal proceedings are pending against Dr. Hill.
 
 
 10
 In this court, as in the court below, Dr. Hill urges three propositions: (1) the seizure of his private books, papers and documents in the manner described above violated his privilege against self-incrimination as contained in the Fifth Amendment to the Constitution; (2) the broad language in the search warrants constitutes "a general warrant" and the search was therefore unreasonable and in violation of his constitutional rights under the Fourth Amendment to the Constitution; and (3) the seizure of his books and records under the warrants and in the manner as described above deprived him of his property without due process of law in violation of the Fifth Amendment to the Constitution.
 
 
 11
 The district court considered and rejected all three contentions and denied Hill's petition for the return of the property and the suppression of the evidence. We consider only the first contention, which is based on the petitioner's privilege against self-incrimination.
 
 
 12
 The first premise in Dr. Hill's self-incrimination argument, and one which is not refuted by the government, is that many if not all of the records seized are records which if sought by subpoena or summons are generally considered privileged from disclosure by a taxpayer under the Fifth Amendment.[2]
 
 
 13
 In numerous cases where the Internal Revenue Service has sought court enforcement of its summons pursuant to statute (26 U.S.C. § 7402), courts have held that a taxpayer may refuse production of personal books and records by assertion of his privilege against self-incrimination. See, e. g., Stuart v. United States, 416 F.2d 459 (5th Cir. 1969); United States v. Cohen, 388 F.2d 464 (9th Cir. 1967); United States v. Kleckner, 273 F.Supp. 251 (S.D.Ohio 1967) app. dism. 382 F.2d 1022 (6th Cir. 1967).
 
 
 14
 As indicated, the government admits that production of the records in question could properly be refused if sought by summons. It argues, however, that because the records in this case were obtained pursuant to a search warrant proper in form, the only question is whether the warrant was issued in compliance with the Fourth Amendment as implemented by the United States Code and the Federal Rules of Criminal Procedure. See 18 U.S.C. § 3103(a); Rule 41, F.R.Crim.Proc. It thus diminishes Dr. Hill's self-incrimination argument to what it describes as, "an abortive assault on the constitutionality of Rule 41(e) of the Federal Rules of Criminal Procedure," which authorizes the issuance of search warrants based on probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
 
 
 15
 In short, the government takes the position that once the validity of a search is established under the Fourth Amendment — and by that fact alone — the Fifth Amendment is not and cannot be violated.
 
 
 16
 The relationship between the Fourth and Fifth Amendments as each pertains to an individual's right to refuse the production of his personal books and records is not a new problem to the courts. As early as Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1885), the Supreme Court discussed the "intimate relation" between the two Amendments. In Boyd, the defendant was ordered to produce an invoice relating to several cases of glass which were alleged to have been fraudulently imported. The production order was based on a statute which required production and which further provided that failure to so produce would serve as an admission of the offense alleged. In discussing the "intimate relation" between the two Amendments the Court stated (at p. 633, 6 S.Ct. at p. 534):
 
 
 17
 "* * * compelling a man `in a criminal case to be a witness against himself,' which is condemned in the fifth amendment, throws light on the question as to what is an `unreasonable search and seizure' within the meaning of the fourth amendment. And we have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself."
 
 
 18
 Although the Boyd case involved a court-issued production order and not a search and seizure,[3] its reasoning was relied on by the Supreme Court in a later case, Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921), which did involve a search made pursuant to a warrant. In that case the defendant was charged with defrauding the government in certain procurement contracts. Documents were taken from his office and used as evidence against him over his objection that their seizure and introduction into evidence violated his Fourth and Fifth Amendment rights.
 
 
 19
 In considering these contentions raised in Gouled, the Supreme Court first distinguished the seizure of "mere evidence" as opposed to the seizure of the "instrumentalities of a crime". The distinction was essential because, under the theory prevailing at that time, the government's right to seize evidence and the right of a citizen to resist such seizure were both dependent upon the property interest each could assert as to the evidence sought to be seized. If the property was the fruits of a crime, e. g., stolen goods, or the instrumentalities of a crime, the property rights in these items were considered forfeited to the State and were contraband. The government thus had a right to seize such property. If the property was not the fruits or instrumentalities of a crime it was not subject to seizure. In Gouled, the Court held that the papers seized were not "instrumentalities of a crime", which would have permitted their seizure, but were rather "mere evidence" and, therefore, the seizure was in violation of the Fourth Amendment and their admission into evidence would be a violation of the Fifth Amendment.
 
 
 20
 The teachings of Gouled concerning the Fourth Amendment were thoroughly reconsidered in Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). The "mere evidence" theory was overruled and the property concept was rejected in favor of an approach which looks more to the rights of privacy which the Fourth Amendment was intended to protect — rather than the property claims the parties might assert.
 
 
 21
 Thus a search and seizure may be unreasonable under the Fourth Amendment even though the government asserts superior property rights in the property seized.
 
 
 22
 "We have recognized that the principal object of the Fourth Amendment is the protection of privacy rather than property, and have increasingly discarded fictional and procedural barriers, rested on property concepts."
 
 
 23
 * * * * * *
 
 
 24
 "And with particular relevance here, we have given recognition to the interest in privacy despite the complete absence of a property claim by suppressing the very items which at common law could be seized with impunity: stolen goods, Henry v. United States, 361 U.S. 98 [80 S.Ct. 168, 4 L.Ed.2d 134]; instrumentalities, Beck v. Ohio, 379 U.S. 89 [85 S.Ct. 223, 13 L.Ed.2d 142]; McDonald v. United States, supra [335 U.S. 451, 69 S.Ct. 191, 93 L. Ed 153]; and contraband, Trupiano v. United States, 334 U.S. 699 [68 S. Ct. 1229, 92 L.Ed. 1663]; Aguilar v. [State of] Texas, 378 U.S. 108 [84 S.Ct. 1509, 12 L.Ed.2d 723.]" (387 U.S. at 304-306, 87 S.Ct. at 1648-1649).
 
 
 25
 The Warden decision thus eliminates any distinction as between items which may be considered "mere evidence" and those which may be "instrumentalities, fruits of crime, or contraband."[4] In overruling Gouled as to its Fourth Amendment teachings, we do not believe that the Court intended to in any way diminish the Fifth Amendment characteristics which might attach to certain items of property such as personal books and records. Indeed, the Fifth Amendment holding of Gouled which concluded that the documents there at issue were protected appears still to be applicable, as that aspect of the case was not mentioned in the Warden opinion.
 
 
 26
 In the previous term, the Court in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), clearly intimated that in any case where a seizure under the Fourth Amendment also involves Fifth Amendment claims, the first step in considering a motion to suppress is to determine whether the introduction into evidence of the material seized would violate the Fifth Amendment. This is to be determined by inquiry as to whether the evidence "relates to some communicative act or writing." If it does, the search is barred under both Amendments.
 
 
 27
 Significantly, the Warden Court immediately distinguished the nature of the evidence seized in that case from the books and papers involved in both Boyd and Gouled.
 
 
 28
 "The items of clothing involved in this case are not `testimonial' or `communicative' in nature, and their introduction therefore did not compel respondent to become a witness against himself in violation of the Fifth Amendment. Schmerber v. [State of] California, 384 U.S. 757 [86 S.Ct. 1826, 16 L.Ed.2d 908]. This case thus does not require that we consider whether there are items of evidential value whose very nature precludes them from being the object of a reasonable search and seizure." (387 U.S. at 302-303, 87 S. Ct. at 1648).
 
 
 29
 The government argues that the evidence here at issue is not testimonial or communicative in nature because its introduction into evidence will not violate the Fifth Amendment privilege — because its seizure did not violate the Fourth Amendment. But this constitutional question begging is little help in our effort to resolve the issue before us. Whether the evidence seized is "testimonial" or "communicative" in nature is the first step in the process in determining whether it may be privileged. If it is testimonial or communicative the privilege may apply.
 
 
 30
 The government also argues that the Fifth Amendment is not applicable because, unlike the circumstances when it proceeds by summons, no compulsion is involved in this case. This theory is best articulated by Dean Wigmore, in his treatise on evidence,[5] wherein he opines that there is no compulsion, because, "the proof of their authenticity, or other circumstances affecting them, may and must be made by the testimony of other persons, without any employment of the accused's oath or testimonial responsibility."
 
 
 31
 This theory has also been accepted by other writers. See Duke, Prosecutions for Attempts to Evade Income Tax: A Discordant View of a Procedural Hybrid, 76 Yale L.J. 1, 47 (1966). The writer there relies on the theory — since discredited in Warden v. Hayden — that these books or records may be instrumentalities of a crime and adds, "And if a valid search warrant is obtained, the agent may seize the taxpayer's books and avoid the fetters of the Fifth Amendment, since he has not compelled the taxpayer to produce any evidence, but has required him merely to step aside while the agent helps himself." See also, Comment, the Fourth and Fifth Amendments — Dimensions of an "Intimate Relationship", 13 U.C.L.A.L.Rev. 857, 864 (1966).
 
 
 32
 In our view, and we believe in the view of the Supreme Court, Dean Wigmore's distinction between obtaining papers from a defendant by search and seizure rather than by force of process is more shadow than substance. As well stated by the Supreme Court in Gouled, supra, 255 U.S. at p. 306, 41 S.Ct. at p. 264:
 
 
 33
 "In practice the result is the same to one accused of crime, whether he be obliged to supply evidence against himself or whether such evidence be obtained by an illegal search of his premises and seizure of his private papers. In either case he is the unwilling source of the evidence, and the Fifth Amendment forbids that he shall be compelled to be a witness against himself in a criminal case."
 
 
 34
 The Supreme Court has reiterated this principle in subsequent cases, see Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925) and United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 523 (1932), and the same proposition appears implicit in the Court's rationale in both Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642 (1967) and Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826 (1966).
 
 
 35
 Dean Wigmore's suggestion that there is no compulsion to testify because proof of authenticity must come from others without the help of the accused sounds well as an abstract proposition, but certainly ignores the realities of trial. The jury knows the books and records belong to the defendant and the entries he has made therein speak against him as clearly as his own voice. This seems particularly true in a prosecution for violation of the income tax laws.
 
 
 36
 In recent years this court has zealously guarded the Fifth Amendment rights of citizens confronted with possible penalties or prosecutions for violation of income tax laws. In United States v. United States Coin and Currency In the Amount of $8674.00, 393 F.2d 499 (7 Cir. 1968), aff'd., 1971, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434, we held that the petitioner there could properly assert his Fifth Amendment privilege in a forfeiture proceeding brought pursuant to 26 U.S.C. § 7302. In United States v. Dickerson, 413 F.2d 1111 (7 Cir. 1969), we held that the Miranda warnings must be given to a taxpayer under criminal investigation by the Internal Revenue Service at the inception of the first contact with the taxpayer after his case has been transferred to the Intelligence Division of the Internal Revenue Service for possible criminal prosecution. See also, United States v. Lackey, 413 F.2d 655 (7 Cir. 1969); United States v. Habig, 413 F.2d 1108 (7 Cir. 1969). We would vitiate the effects of those decisions if we ruled today that the government could avoid all Fifth Amendment considerations by merely obtaining a search warrant.
 
 
 37
 In deciding this case as we do, we are not unmindful of the very difficult task that confronts the Internal Revenue Service in meeting its responsibility to enforce the income tax laws. There is no evidence, however, that the availability of the privilege against self-incrimination has unduly interfered with prosecutions which result from investigations wherein taxpayers' books and records have been sought by a summons. We believe the same experience will prove true in future cases involving searches and seizures.[6] Of course, the Fifth Amendment makes the business of criminal prosecutions more difficult, but this is its clear intent.
 
 
 38
 The order of the district court is reversed and the cause is remanded with directions to reconsider the taxpayer's petition in light of this opinion. 18487
 
 
 
 Notes:
 
 
 *
 Senior Judge William J. Campbell of the Northern District of Illinois is sitting by designation
 
 
 [1]
 "fiscal records relating to the income and expenses of Dr. Vincent R. Hill from his medical practice and other sources since January 1, 1963, including but not limited to control records and ledger cards compiled and kept by use of a Burroughs machine bookkeeping system; log books; or journals; copies of receipts covering payments of fees; appointment books; records of visitations of patients away from the medical office; patients folders and their contents; adding machine tapes; bank deposit slips; bank statements; cancelled checks; copies of federal income tax returns; and divers other records of financial transactions which are intended for use in violating the provisions of the Internal Revenue laws or regulations prescribed thereunder, or which have been so used; particularly Sections 7302 and 7201 of the Internal Revenue Service laws (26 U.S.C. 7302-7201). Said records also comprise evidence of criminal offenses in violation of the laws of the United States within the meaning of Section 3103(a), 18 U.S.C."
 
 
 [2]
 It is notable that the government does not suggest that the records are producible and not privileged under the "required records doctrine" enunciated in Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948). It seems apparent however, that records maintained by an individual taxpayer exceed the constitutional limits of the required records doctrine. See Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968)
 
 
 [3]
 See concurring opinion of Mr. Justice Miller, 116 U.S. at 638, 65 S.Ct 524; see also 8 Wigmore on Evidence § 2264, n. 4. It is clear, however, that the Fourth Amendment's protection against unreasonable search and seizure may be violated by a court order to produce evidence. See In Re Antonio Dionisio and Charles Bishop Smith, witnesses before the Special February 1971 Grand Jury, 442 F.2d 276 (7th Cir. 1971)
 
 
 [4]
 In response to theWarden decision, Congress adopted a statute which authorizes the issuance of a warrant to search for and seize "mere evidence," 18 U.S.C. § 3103(a).
 
 
 [5]
 8 Wigmore on Evidence, § 2264
 
 
 [6]
 On oral argument government's counsel suggested that it would have proceeded by summons in this case, but the defendant would have destroyed the records. Of course his destruction of the records would have been a pointless gesture, because as the government has been willing to admit, had it proceeded by summons, he could have relied on the Fifth Amendment privilege and refused production. Furthermore, destruction of books and records by a taxpayer itself provides strong evidence of willfulness and concealment. United States v. Holovachka, 314 F.2d 345 (7th Cir. 1963); Balter, Tax Fraud and Evasion (3d Edit.) Section 13.3-5
 
 
 
 39
 FAIRCHILD, Circuit Judge (dissenting).
 
 
 40
 One of appellant's arguments was that the warrant failed to fulfill the fourth amendment requirement that the things to be seized be "particularly" described. The majority decision is based on a different ground, and I assume, for the present purpose, that the warrant was sufficient in this respect. I also assume the appealability of the order.
 
 
 41
 In Warden v. Hayden (1967), 387 U.S. 294, 303, 87 S.Ct. 1642, the Supreme Court found it unnecessary to "consider whether there are items of evidential value whose very nature precludes them from being the object of a reasonable search and seizure." In order to suppress the evidence in this case, it would be necessary to decide both that such class does exist, and that the business and professional records seized from appellant are within it.
 
 
 42
 Such a class would be difficult to define whether one were basing its existence on the policy underlying the fourth amendment or the fifth. Judge Friendly suggested in United States v. Bennett (2d Cir., 1969), 409 F.2d 888 "that an approach geared to the objective of the Fourth Amendment to secure privacy would seem more promising than one based on the testimonial character of what is seized." He also noted that Katz v. United States (1967), 389 U.S. 347, 354, 88 S.Ct. 507, 19 L.Ed.2d 576, authorized warrants for limited surveillance of telephone communications, but that such communications, like papers, would often be "testimonial."
 
 
 43
 Assuming, however, that there is a class of papers so intimately confidential and so much a part of personhood that they ought to enjoy a superlative privacy and be protected from seizure upon an adequately grounded warrant, it does not seem to me that the records in question here have the required character. They appear to have been maintained for business and professional purposes, with the knowledge and assistance of employees, and the manner in which they were allegedly kept and used, made them, in a sense, instrumentalities of the tax evasion offense claimed.