**UNITED STATES of America,
Plaintiff,**

v.

**John BLANK et al., Defendants.**

**Crim. No. 71-399.**

United States District Court,
N. D. Ohio, E. D.

Aug. 27, 1971.

Steven Olah, Dept. of Justice, Cleveland, Ohio, for Government.

C. D. Lambros, Cleveland, Ohio, for John Blank.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

The issue presented by this motion to suppress is whether the government has the right to seize one's personal papers, pursuant to a search warrant, when the effect of such seizure would be to compel one to testify against himself. The defendant acknowledges that the search pursuant to which the papers were taken was in no way violative of the strictures of the Fourth Amendment. The defendant alleges that the writings seized constitute testimonial or communicative evidence, which is self-incriminatory and as such could not be seized in an admittedly lawful search.

The Fifth Amendment to the United States Constitution states that "no person * * * shall be compelled in any criminal case to be a witness against himself. * * *" This prohibition was extended to potentially incriminating writing in Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) where Mr. Justice Bradley stated that "any compulsory discovery by * * * compelling the production of one's private books and papers to convict

him of a crime or to forfeit his property is contrary to the principles of a free government." 116 U.S. at 631–632, 6 S. Ct. at 533 (1886). *Boyd* concerned the production of documents in accordance with the terms of a subpoena. In Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921), this principle was extended to search warrants. Mr. Justice Clarke, writing for a unanimous Court, stated that when evidence is seized in violation of the Fourth Amendment, the Fifth Amendment forbids that the evidence may be used against a witness for to do so would compel the witness to testify against himself. While there seems to be no distinction made in the cases between search warrants and subpoenas, see Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed 145 (1925); United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932), the Supreme Court has never resolved the problem that faces this court today.

The issue under examination was raised and discussed by the Seventh Circuit Court of Appeals in Hill v. Philpott, 445 F.2d 144 (1971). In that case Doctor Hill allegedly kept two sets of books, one for the Internal Revenue Service and one for his private files. IRS agents obtained a warrant to search for evidence of attempted tax evasion (26 U.S.C. § 7201) and seized most of the doctor's "private" business records. These records, the court notes, would have been considered privileged if the government attempted to obtain them by use of a subpoena or summons. The government argued that once the validity of a search is established under the Fourth Amendment, the Fifth Amendment privilege is not and cannot be violated. The government in the case at bar has taken a similar position but it does not hold to such an absolute rule. The Seventh Circuit rejected this argument. It noted that although the "mere evidence" rule was overruled in Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (compare Gouled v. United

States, *supra*) and the property orientation of the Fourth Amendment was abandoned in *Warden* and in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1968), in which the Court stated that the Fourth Amendment protects people and their rights of privacy as opposed to places and one's property, the Supreme Court has in no way attempted to diminish the Fifth Amendment's privilege which might attach to certain items of property, such as personal books and records, which were validly seized.

The government, in this case, has attempted to distinguish *Hill* on the grounds that *Hill* was a tax case and that the records sought there were the doctor's business records kept in the normal course of his legitimate medical practice. In the case at bar, the papers seized were the records of an illegal gambling business and these may in no way be construed to be records of a legitimate, legal business enterprise. The government insists that * * * "Any records kept pursuant to such a business must necessarily be considered instrumentalities of the crime." In Hill v. Philpott, the crime was not paying the tax and the private records seized were evidence of that crime. Here the gambling records seized were a necessary part and parcel of the crime of bookmaking. The distinction is not very clear. The government seems to rely heavily on the distinction between evidence of a crime and instrumentalities of a crime. They have conceded that some evidence may be inadmissable because of the Fifth Amendment privilege, but they have not enlightened us as to what would qualify for this honor, but regardless, none of that evidence is here present. The government does not substantiate its claim that the records kept by a successful bookmaker constitute instrumentalities of a crime. But even if these are instrumentalities and not mere evidence as it seems to be, that goes to the question of the seizure of the evidence under the Fourth Amendment. That is not the issue. The question be-

fore this court is whether the evidence seized, be it called instrumentality or mere evidence, is violative of the Fifth Amendment privilege against self-incrimination. In both cases the records constituted evidence of the crime. Dr. Hill recorded his entries in a separate set of books and did not disclose this income to the Internal Revenue Service. The defendant allegedly recorded necessary items in order to keep up his business, which in and of itself was illegal. The defendant's alleged crime is bookmaking, not keeping records of his activities, just as Dr. Hill's crime was not informing the government of his total income rather than not keeping accurate records of his "unreported income."

■ There seems to be some question as to whether these records come within the category of "testimonial" or "communicative" evidence. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). We find, as did the Seventh Circuit, that the Supreme Court intended that there be no distinction between evidence obtained by subpoena and evidence obtained by search and seizure.

> "In practice the result is the same to one accused of crime, whether he be obliged to supply evidence against himself or whether such evidence be obtained by an illegal search of his premises and seizure of his private papers. In either case he is the unwilling source of the evidence, and the Fifth Amendment forbids that he shall be compelled to be a witness against himself in a criminal case." Gouled v. United States, *supra*, 255 U.S. at 306, 41 S.Ct. at 264.

Wigmore has suggested, 8 Wigmore on Evidence § 2264, that there is no compulsion to testify because proof of authenticity must come from another in the search warrant situation as opposed to the production elicited from the issuance of a subpoena. The Seventh Circuit disposed of this argument by saying that this "sounds well as an abstract proposition, but certainly ignores the

realities of trial. The jury knows the books and records belong to the defendant and the entries he has made therein speak against him as clearly as his own voice." 445 F.2d at 149. Therefore we find that this evidence is testimonial in nature.

■ An analogy to another series of cases seems apposite. In Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L. Ed.2d 906 (1968) and Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L. Ed.2d 923 (1968). The Supreme Court held that the Fifth Amendment privilege provided a complete defense to a prosecution for failure to register and pay the occupational tax on wagers, to a prosecution for failure to pay the excise tax on proceeds from wagering and to a prosecution for possession of an unregistered weapon. See Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L. Ed.2d 57 (1969). The Court in deciding *Marchetti, Grosso, Haynes* and *Leary* distinguished Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948) on the grounds that *Shapiro* was required to supply information which had a "public aspect" (records of fruit sales which had to be kept in accordance with OPA regulations) and that they were the kind of records that a retailer customarily kept. Dr. Hill's records were similar to those of *Shapiro* while the defendant's records are closer to those in *Marchetti, Grosso, Haynes* and *Leary*. Dr. Hill was a practicing physician who normally kept records of all his patients, but did not reveal all of them to IRS. Shapiro was charging more than the government approved price for some of his fruit. In both instances production of the records would show that while operating a normal and regular business Dr. Hill and Shapiro had violated the law. The Seventh Circuit noted that the records kept were not "required records" as was the case in *Shapiro*. Since these records are immune from production by governmental subpoena we concur with the opinion of the Seventh Circuit in

*Hill.* The documents, in the case at bar, however, are closer to the *Marchetti* situation. Production of these documents would, instead of showing a violation of the law as the result of abuses of a normal business, indicate and acknowledge the defendant's participation in an illegal enterprise. As such, these documents are per se self-incriminatory. *Marchetti, Grosso, Haynes* and *Leary* instruct us that the government cannot condition the payment of a tax on an admission that one is participating in illicit activities. We cannot condone the Fifth Amendment violation here either.

The dissent in *Hill* contends that in Warden, Md. Penitentiary v. Hayden, *supra*, 387 U.S. at 303, 87 S.Ct. at 1648 the Supreme Court found it unnecessary to "consider whether there are items of evidential value whose very nature precludes them from being the object of a reasonable search and seizure." Yet the Supreme Court could not have intended to include items which by their testimonial character violate the privilege against self-incrimination. Their concern in *Warden* was the mere evidence rule and not the Fifth Amendment.

The standard of review adopted by the Seventh Circuit is one in which we concur. In examining seized records this court must determine if the records were those which are generally considered privileged from disclosure if sought by a subpoena or summons. There are numerous cases where courts have held that a taxpayer may refuse production of personal books and records by the assertion of his privilege against self-incrimination. See e. g., United States v. Kleckner, 273 F.Supp. 251 (D.C.S.D. Ohio 1967), app. dism. 382 F.2d 1022 (6th Cir. 1967); Stuart v. United States, 416 F.2d 459 (5th Cir. 1969).

Similarly here the defendant could properly refuse to produce these records if he were required to do so by a subpoena or summons by the assertion of his Fifth Amendment privilege. Therefore the evidence against John Blank must be suppressed.

 Since the claims of privilege under the Fifth Amendment are personal and since there is no question that the evidence was not validly seized, this evidence may be used against any persons other than the defendant.

It is so ordered.