**UNITED STATES of America,**
**Appellee,**

v.

**Alois Peter WARREN, Appellant.**

**No. 207, Docket 71-1545.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 8, 1971.

Decided Jan. 5, 1972.

Irving Anolik, New York City (Sidney O. Raphael, Raphael, Searles & Vischi, New York City, of counsel), for appellant.

Walter J. Higgins, Jr., Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York, of counsel), for appellee; Charles B. Updike, John W. Nields, Jr., Asst. U. S. Attys., of counsel.

Before WATERMAN and SMITH, Circuit Judges, and ZAMPANO,* District Judge.

J. JOSEPH SMITH, Circuit Judge:

Dr. A. Peter Warren appeals from a judgment of the United States District Court for the Southern District of New York (Constance Baker Motley, Judge), convicting him after an eight day jury trial on one count of conspiring to violate the federal food and drug laws relating to stimulant or depressant drugs and of four counts of selling, delivering, and disposing of amphetamine sulphate in violation of 21 U.S.C. §§ 321, 331(q) (2), 333 and 360a(b) (Supp. V 1969). Dr. Warren was sentenced to five years imprisonment on each count, to run concurrently, and was fined $10,000. On appeal he claims that the district court erred in numerous respects in the conduct of the trial. We find no error

* United States District Judge for the District of Connecticut, sitting by designation.

which warrants disturbing the verdict, and we affirm.

At the time of the events charged in the indictment, Dr. Warren was a duly licensed physician practicing in New York City. As a practitioner licensed by law to prescribe or administer depressant or stimulant drugs while acting in the course of his professional practice, Dr. Warren was exempt from the statutory prohibition against selling or disposing of amphetamines as long as he was acting "in the ordinary and authorized course of his business [or] profession. . . ." 21 U.S.C. § 360a(b) (Supp. V 1969). The government attempted to prove at trial that the sales alleged in the indictment had no medical basis and were economically motivated retail sales rather than treatments given in the course of a physician-patient relationship.

The government established its case through the testimony of several special agents of the Bureau of Narcotics and Dangerous Drugs. Richard Dreiwitz, an agent acting in an undercover capacity, was introduced to Dr. Warren at his office in November, 1970 by another patient of the doctor's. Dreiwitz mentioned that he needed a two week supply of good quality methamphetamine; without conducting a medical examination, Dr. Warren gave the agent two vials, which subsequent analysis revealed contained 30 cc of amphetamine sulphate each, and instructions on use.[1] Dreiwitz was to inject himself daily with a mixture of 2 cc's of the "meth," a vitamin solution and "PW-7." This last ingredient is procaine hydrochloride, a mild anesthetic.

Two weeks later, Dreiwitz bought another 60 cc of amphetamines from Dr. Warren's assistant.[2] On his third visit, Dreiwitz told the doctor that he didn't need the vitamins, as he only took the

drug to help his performance (he was allegedly a musician). He requested enough amphetamine for four people for two weeks, claiming that some of his friends, whom Warren had never seen, wanted the injections too. He paid $900 for six 30 cc vials.

Less than a week later Dreiwitz, having arranged to record the subsequent conversation, telephoned Dr. Warren. Dreiwitz and the doctor negotiated a large sale of drugs; Dr. Warren agreed to give them to a friend of the agent's, who was to come to the doctor's office. Agent Robert Brown subsequently picked up six 30 cc vials. Thus, in a twenty day period, Dr. Warren sold Dreiwitz enough amphetamine sulphate for 240 injections.

Dr. Warren was indicted on January 26, 1971. He was arrested the next day, and his office was searched pursuant to a warrant. The search uncovered over one hundred 30 cc vials of unlabeled or mislabeled amphetamine sulphate. The doctor was brought to trial in May, 1971. The government's witnesses included a musician who had been misinformed by Dr. Warren about the content of the injections and who had, after several months of "treatment," been hospitalized for psychiatric reasons. Another patient, who had apparently become addicted to the injections, had never been told what sort of drug he had been receiving. An expert witness for the government testified that providing amphetamine to people who had not been medically examined, much less seen, went beyond any physician's proper relationship with a patient. This is particularly true when, as here, the drug was given for self-injection, a technique susceptible of abuse.

Warren claimed that he was entrapped and that he never sold amphetamine other than "in the course of [his] profes-

1. Dr. Warren testified that he took Dreiwitz' pulse and that the agent told him that he had recently been examined by another doctor, who had found him perfectly healthy. The agent denied that there had been any examination or con-

versation on that point. The jury was entitled to disbelieve the doctor.

2. The assistant was indicted on two counts of conspiring and of sales. Her trial was severed from that of Dr. Warren.

sional practice." He claimed that medical examinations were always done on patients and that Dreiwitz had assured him that he had recently seen another doctor. The defendant's expert witness testified that there were some approved medical uses for amphetamine; he agreed with the government's witness that a physical examination is a prerequisite to its use and that the drug ought not to be dispensed for self-administration. Both expert witnesses agreed that there was as of now no medically approved reason for long-term treatment with amphetamines.

The jury found Warren guilty on all counts. Appellant contends on appeal that he was deprived of his constitutional rights by numerous rulings of the trial court. He claims that the search and seizure of his drugs and patient records was illegal and that it was tainted by an incriminating form he was pressured to sign during the search; that a hearing ought to have been held on the admissibility of the tape recording of his conversation with Agent Dreiwitz; and that the court erred in admitting certain other evidence. He urges that the court committed error in sentencing him without a pre-sentence report and in refusing to pass on his post-trial motions. Last, he maintains that his guilt was not proved beyond a reasonable doubt. None of these claims is meritorious.

■ Warren claims that the search of his office and seizure of drugs and patient cards or records violated his Fourth and Fifth Amendment rights. The search was conducted pursuant to a warrant issued on the basis of a detailed affidavit from the agent who had retrieved Dreiwitz' drug order from Dr. Warren. The facts stated therein clearly constituted probable cause. The warrant named dangerous drugs and records of the purchase, sale, or other distribution of such drugs as the objects to be seized. Appellant claims that the agents rummaged through his office; the thoroughness of the search was necessitated by the discovery of numerous vials of amphetamine sulphate in boxes labeled "perfume" or "shaving lotion" stored in closets and drawers in the office and adjoining dark room. The agents did not go beyond the terms of the warrant, and their search did not violate the Fourth Amendment.

■■ Warren claims that his Fifth Amendment rights were violated because the records seized were testimonial in nature. The records consisted of index cards with patient names and notations of the number of injections given, the dates and charges for them. They contained no other medical information. Hill v. Philpott, 445 F.2d 144 (7 Cir. 1971), held that business records seized by an Internal Revenue agent could not be used without violation of the defendant's Fifth Amendment rights. In that case, however, the records were personal business items; in this case, Dr. Warren was required under 21 U.S.C. § 360a(d) to make and keep records on acquisition and disposition of amphetamine. Such records, part of a regulatory scheme with public purposes, are not protected by the Fifth Amendment and are specifically excluded from the holding in *Hill*. 445 F.2d at 146. United States v. Kaufman, 429 F.2d 240, 247 (2d Cir.), cert. denied, 400 U.S. 925, 91 S.Ct. 185, 27 L.Ed.2d 184 (1970); Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948). In any case, the records were used only to impeach Dr. Warren's testimony that he had dispensed amphetamine to only a small percentage of his patients. Under Harris v. New York, 401 U.S. 222, 91 S. Ct. 643, 28 L.Ed.2d 1 (1971), citing Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), this would have been proper even were the records improperly obtained.

■ Warren also claims that the court below committed error in not holding a hearing on the legality of the search and seizure. Judge Motley heard argument on the motion to suppress at a pretrial hearing and conference, and she wrote a memorandum opinion supporting her decision to deny the motion.

Her decision that the issue did not warrant another hearing is within her discretion. United States v. Suarez, 380 F.2d 713 (2d Cir. 1967); United States v. Culotta, 413 F.2d 1343 (2d Cir.) cert. denied, 396 U.S. 1019, 90 S.Ct. 586, 24 L. Ed.2d 510 (1969). If the facts alleged, assuming they could be proven, would have justified granting the motion, then a hearing would have been more essential. Here the question was one of law, and the court treated it fully.

■ Appellant also argues that even if the search was otherwise valid, it was tainted by a "Voluntary Surrender of Narcotics Privileges" form which he signed in his office when the agents arrested him. The signer of the form consents to the government's seizure of narcotic drugs then in his possession and surrenders the right to dispense such drugs. The form states that the signer acts voluntarily, after being apprised of his rights, in an effort to show good faith in remedying an alleged failure to comply with federal laws on narcotic drugs. Warren claims that he was not advised of his rights before signing and that therefore the "confession" was coerced. The form is claimed to have prejudiced him in this trial because it gave the agents the right to do a broader search than was authorized by the search warrant.

This argument contains several flaws. First, there was testimony that Warren was given the opportunity to call a lawyer. Second, before signing the form he crossed out the only incriminating paragraph on the page. The issue of coercion was not decided by the court below, however, because the form was not used in this trial and is irrelevant to it. The form covered only narcotic drugs, not amphetamines, and Warren was not prosecuted for any narcotics violation.[3] Nor did Warren present any evidence that "fruits" of the form had been used in any way at the trial. If the govern-

ment's actions were unwise and even improper, a civil action to recover the right to register is the appropriate method of redressing the wrong. In re Wiltron Associates, Ltd., 49 F.R.D. 170 (D.C.1970).

■ Dr. Warren claims that a hearing ought to have been held on the admissibility of the tape recording of his telephone conversation with Agent Dreiwitz, during which the two discussed a sale of amphetamines. Dr. Warren errs in claiming that this issue was not aired, as it was discussed at length at a pretrial hearing in May, 1971. The court held that if she found the tape audible, it would be admitted; it was made with the consent of one party to the conversation and was therefore admissible. United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1970). The court below found it audible, and we concur in that judgment.

■ Warren's most substantial contention is that the court abused its discretion in sentencing him to five years imprisonment, the maximum on each count, without awaiting a pre-sentence report. Under Rule 32(c), Fed.R.Crim. P., a pre-sentence report is to be prepared "unless the court otherwise directs." The judge has been held to have discretion to dispense with the report if he feels it will not affect the disposition. United States v. Visconti, 261 F.2d 215 (2d Cir. 1958); United States v. Schwenke, 221 F.2d 356 (2d Cir. 1955). In this case Judge Motley sentenced Dr. Warren several days after the judgment was entered, and she did not wait for a report. This is somewhat troublesome, because this court has stressed the importance of the district court having unfettered access to any relevant information about the defendant, and information can be used in the pre-sentence report which would be beyond the permissible scope at trial. United States v. Schipani, 435 F.2d 26 (2d Cir.), cert. de-

---

3. The only reference to it during the whole course of the trial was a result of questions by defense counsel quite obviously aimed at eliciting mention of the document from a government agent.

nied, 401 U.S. 983, 91 S.Ct. 1198, 28 L. Ed.2d 334 (1970).

It is theoretically possible, and courts have discussed an abuse of discretion in the decision to proceed without a report, but none has yet disturbed a sentence on these grounds. Some circuits are evidently uneasy about the problem, however, and justified the lack of report because all the necessary information had been made available in some other manner or because the sentence was lenient. *See* Viramontes-Medina v. United States, 411 F.2d 981 (9 Cir. 1969); King v. United States, 410 F.2d 1127 (9 Cir. 1969); United States v. Hutul, 416 F.2d 607 (7 Cir. 1969), cert. denied, 396 U.S. 1012, 90 S.Ct. 573, 24 L.Ed.2d 504 (1970); *but see* United States v. Teague, 445 F.2d 114 (7 Cir. 1971).

In this case, Judge Motley announced her intention of proceeding without the report by stating that "it should be timely settled . . . [so] the doctor can then know what steps to take further and get this matter finally concluded." While such a justification might exist in almost every case, it is also true that the appellant did not object to this plan. The record also shows that appellant had testified at some length about his practice; the fact that he had no prior record had been noted. The court felt that the offense, involving serious danger to the physical and mental health of many hundreds of unsuspecting people, was a particularly callous example of the increasingly severe problem of drug abuse. We find her action justified in this instance, therefore.

It would be wise, however, for trial judges, in those rare cases in which they dispense with the pre-sentence report, to state on the record the reasons for failing to make use of a tool which has proven helpful in individualizing and thus improving the sentencing process. Such a requirement will provoke thought about the decision to bypass this potentially valuable step in the criminal process.

Appellant complains of the treatment accorded his defenses by the court and jury. He claims that his guilt was not established beyond a reasonable doubt because it was not conclusively shown that the sales were made outside the course of his professional practice. Though he concedes that his behavior may have been ill-advised and even incompetent under medical standards, he claims that it did not violate the law. The judge instructed the jury clearly and correctly on the relevant standard. Congress did not intend by its exception to the statutory prohibition to allow doctors to go into the retail dangerous drug business. White v. United States, 399 F.2d 813, 817 (8 Cir. 1968). The evidence was sufficient to allow the jury to conclude that the appellant was violating the law.

Dr. Warren's other defense was that he was entrapped by the agents. The judge charged the jury correctly on his issue, stating that if the defendant showed government initiation of the crime with some evidence, then the government had to show his propensity to commit it beyond a reasonable doubt. The issue is for the jury, and the testimony of the agents and the quantity of drugs found in Dr. Warren's office gave them ample basis for rejecting the defense. *See* United States v. Braver and Lehrer, 450 F.2d 799 (2d Cir. 1971); United States v. Leighton, 386 F.2d 822 (2d Cir. 1967), cert. denied, 390 U.S. 1025, 88 S.Ct. 1412, 20 L. Ed.2d 282 (1968).

Appellant argues that the trial court erred in not passing on his motions for a new trial and for judgment notwithstanding the verdict. He was sentenced on June 2, 1971, and filed a notice of appeal a few days thereafter. On July 8, 1971, he moved for a new trial. Once a notice of appeal has been filed, the district court is deprived of jurisdiction to act on the motions. United States v. Brown, 335 F.2d 170 (2d Cir. 1965); United States v. Ellenbogen, 390 F.2d 537 (2d Cir.), cert. denied, 393 U.

S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1969), reh. denied, 399 U.S. 917, 90 S. Ct. 2187, 26 L.Ed.2d 576 (1970).

Miscellaneous rulings of the trial court disturb appellant. One such ruling was that in which the court permitted the introduction of evidence obtained in a search conducted a day after the filing of the indictment. The indictment alleged a conspiracy running from September 1, 1970 to January 26, 1971, the date the indictment was returned. Warren claimed that drugs seized the day after the conspiracy allegedly terminated were irrelevant and prejudicial. Judge Motley held that this evidence, tending to show acts similar to those charged in the indictment, was admissible to show intent to violate the law and to negate the defense of entrapment raised by appellant. The rule as to such evidence of prior similar acts, as it has been framed in this circuit, allows its admission for all purposes except to show the criminal character or disposition of the defendant. *See, e. g.,* United States v. Knohl, 379 F.2d 427 (2d Cir. 1967); United States v. Deaton, 381 F. 2d 114 (2d Cir. 1967). The court properly admitted the evidence and instructed the jury on its use.

Defense counsel asked Judge Motley to postpone the trial for several months so that all of Warren's counsel could be present. In light of this court's recent promulgation of rules on speedy disposition of criminal cases and the heavy backlog under which the courts suffer, the court's decision was proper; defense counsel themselves conceded this to be true.

The court refused to instruct on "two inferences," that is, that if the circumstantial evidence is susceptible of two inferences, one pointing to guilt and the other to innocence, the defendant must be acquitted. Under Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), and numerous cases following it, this charge is not required. The instructions on reasonable doubt were proper.

The last of appellant's myriad claims is that he ought to have been sentenced under the new drug control law, passed in October, 1970, to go into effect on May 1, 1971. However, Warren's claim that under the new law the maximum sentence he could have received is one year is erroneous. The offense he committed, under then-existing 21 U.S. C. § 331(q) (2) has now been transferred to section 841(a) (1), for which the maximum penalty is a sentence of five years and a fine of $15,000, $5,000 more than the limit under which Warren was held. A saving clause in the new law made it inapplicable in this case.

Judgment affirmed.