**UNITED STATES of America,
Plaintiff-Appellant,**

**v.**

**John BLANK et al., Defendant-Appellee.**

**No. 71-1849.**

United States Court of Appeals,
Sixth Circuit.

April 28, 1972.

Steven R. Olah, U. S. Dept. of Justice, Cleveland, Ohio, for appellant; Henry E. Petersen, Acting Asst. Atty. Gen., Crim. Div., David Margolis, Robert D. Gary, Attys., U. S. Dept. of Justice, Washington, D. C., on brief.

C. D. Lambros, Cleveland, Ohio, for appellees; Berger, Kirschenbaum & Lambros, Cleveland, Ohio, on brief.

Before EDWARDS and CELE-BREZZE, Circuit Judges, and KEITH,* District Judge.

EDWARDS, Circuit Judge.

In this case the government appeals from an order entered by a District Judge in the United States District Court for the Northern District of Ohio granting defendant's motion for suppression of evidence in an organized gambling case. The evidence, which was seized under an admittedly valid search warrant, represents work sheets of a sports and horse book betting business. The sole issue presented is whether or not the fact that these records may be in the handwriting of the defendant requires the granting of defendant's motion to suppress on Fifth Amendment grounds.

There are no facts in dispute.

On June 15, 1971, a three-count indictment was returned in the United States District Court for the Northern District of Ohio charging appellee John Blank and 13 others with conducting an illegal sports and horse-book gambling business, in violation of 18 U.S.C. § 1955 (1970), and with conspiracy to violate that statute. One of the overt acts charged in the conspiracy count was a telephone call to appellee's headquarters in which were discussed the amounts

---

* Honorable Damon J. Keith, United States District Judge for the Eastern District of Michigan, Southern Division, sitting by designation.

owed and owing to his bettors. On August 27, 1971, the District Court sustained a motion by appellee to suppress evidence seized under a search warrant. The government pursuant to 18 U.S.C. § 3731 (1970), has appealed to this court.

The search warrant, based on a 50-page affidavit showing violations of 18 U.S.C. §§ 1955 and 371 (1970), was issued on June 2, 1971, and authorized a search of a one-story single family dwelling at 15916 Mendota Avenue, Maple Heights, Ohio. The warrant directed the search of the described premises for, and the seizure of "bookmaking records and wagering paraphernalia consisting of, but not limited to, betting slips and cash, bet notices, and books of account." All of this property, the warrant stated, was intended for uses in violation of §§ 1955 and 371, Title 18 U.S.C.

On June 3, 1971, the FBI agents executed the warrant and seized various items of wagering records, including sheets reflecting the names of bettors and the amount of money owed or owing on a daily basis, and account sheets showing various computations reflecting the overall profits or losses of the business.

On August 3, 1971, appellee filed a motion to suppress the items seized under this warrant on the ground that the material seized "may be his handwriting, is 'testimonial,' and potentially self-incriminating and thus not subject to seizure." Appellee attached a brief to his motion and the government filed a memorandum in opposition to his motion to suppress. On August 27, 1971, the District Court ordered the records suppressed against appellee (330 F.Supp. 783). It held no hearing but based its ruling on the motion, the brief and the memoranda filed by the parties.

The District Judge recognized the validity of the search warrant and further recognized that "the papers seized were the records of an illegal gambling business." Relying, however, upon the rationale of a recent case from the Sev-

enth Circuit (Hill v. Philpott, 445 F.2d 144 (7th Cir.), cert. denied, 404 U.S. 991, 92 S.Ct. 533, 30 L.Ed.2d 542 (1971)), he ruled that there is "no distinction between evidence obtained by subpoena and evidence obtained by search and seizure." He held the seized records to be "testimonial" in character and hence "per se self-incriminatory."

The basic reasoning of the majority of the *Philpott* court appears to be:

"The first premise in Dr. Hill's self-incrimination argument, and one which is not refuted by the government, is that many if not all of the records seized are records which if sought by subpoena or summons are generally considered privileged from disclosure by a taxpayer under the Fifth Amendment.[2]

"2. It is notable that the government does not suggest that the records are producible and not privileged under the 'required records doctrine' enunciated in Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948). It seems apparent however, that records maintained by an individual taxpayer exceed the constitutional limits of the required records doctrine. See Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968)."

"In numerous cases where the Internal Revenue Service has sought court enforcement of its summons pursuant to statute (26 U.S.C. § 7402), courts have held that a taxpayer may refuse production of personal books and records by assertion of his privilege against self-incrimination. See, e. g., Stuart v. United States, 416 F.2d 459 (5th Cir. 1969); United States v. Cohen, 388 F.2d 464 (9th Cir. 1967); United States v. Kleckner, 273 F.Supp. 251 (S.D.Ohio 1967), app. dism. 382 F.2d 1022 (6th Cir. 1967)." Hill v. Philpott, *supra*, 445 F.2d at 146.

Judge Fairchild in dissent in *Philpott* concerned himself more with the nature of the evidence under consideration than the method employed to obtain it:

"Assuming, however, that there is a class of papers so intimately confidential and so much a part of personhood

that they ought to enjoy a superlative privacy and be protected from seizure upon an adequately grounded warrant, it does not seem to me that the records in question here have the required character. They appear to have been maintained for business and professional purposes, with the knowledge and assistance of employees, and the manner in which they were allegedly kept· and used, made them, in a sense, instrumentalities of the tax evasion offense claimed." Hill v. Philpott, *supra*, 445 F.2d at 150 (*dissenting opinion*).

We do not need to reexamine the facts pertaining to the doctor's double bookkeeping in *Philpott* to answer the problems of our instant case. We reject the rationale which underlies the majority decision of the Seventh Circuit—at least as it applies to our instant case.

We believe that there is a valid and important distinction between records sought by subpoena and records sought by search warrant. The subpoena compels the person receiving it by his own response to identify the documents delivered as the ones described in the subpoena. The search warrant involves no such element of compulsion upon an actual or potential defendant.

On this point Wigmore says:

"(1) It follows that the production of *documents* or *chattels* by a person (whether ordinary witness or party witness) in response to a subpoena, or to a motion to order production, or to other form of *process relying on his moral responsibility for truthtelling*, may be refused under the protection of the privilege. This is universally conceded. For though the documents or chattels thus sought be not oral in form, and though they be already in existence and not desired to be first written and created by a testimonial act or utterance of the person in response to the process, still there is a testimonial disclosure implicit in their production. It is the witness' assurance, compelled as an incident of the process, that the articles produced are the ones demanded. No meaningful distinction can be drawn between a communication necessarily implied by legally compelled conduct and one authenticating the articles expressly made under compulsion in court. Testimonial acts of this sort—authenticating or vouching for pre-existing chattels—are not typical of the sort of disclosures which are caught in the main current of history and sentiments giving vitality to the privilege. Yet they are within the borders of its protection.

"(2) Furthermore, it follows that documents or chattels obtained from the person's control *without* the use against him of process relying on his truthtelling are *not* within the scope of the privilege. As Mr. Justice Holmes said, 'A party is privileged from producing the evidence but not from its production.' Unless some other principle prevents, the articles may be used evidentially. Obviously, the proof of their authenticity, or other circumstances affecting them, may and must be made by the testimony of other persons, without any employment of the accused's oath or testimonial responsibility. This distinction is illustrated in a variety of applications to documents and chattels obtained by search and seizure independent of testimonial process—e. g., by physical search of the person or premises without calling upon the party for any act or utterance of his own." 8 J. Wigmore, Evidence § 2264 (McNaughton rev. 1961). (Footnotes omitted.)

Here, in fact, we have no way of knowing that the instant records are connected with the defendant beyond his counsel's statement in the motion to suppress that they "may be" in his handwriting. This, however, is an important fact upon which the government must at trial bear the burden of proof and upon which, for all we know, there may be strong dispute.

More important aspects of this problem must, however, be analyzed against the language of the critical constitutional amendments (the Fourth, the Fifth, and the Fourteenth) which arguably may be involved.

The applicable language in each follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV

\* \* \* \* \* \*

"[N]or shall [any person] be compelled in any criminal case to be a witness against himself, . . ." U. S. Const. Amend. V.

\* \* \* \* \* \*

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law; . . ." U.S. Const. Amend. XIV, § 1.

No claim is advanced that there has been any violation of the specific language of the Fourth Amendment. And we have already pointed out that the valid search warrant does not "compel" the defendant to do anything in Fifth Amendment terms. Appellee's ultimate reliance therefore must be upon the right of privacy as described by the Supreme Court in Fifth Amendment terms in Warden v. Hayden, 387 U.S. 294 (1967), and Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and in Fourteenth Amendment terms in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

We believe the Supreme Court's closest approach to the problems of this case may be found in the language quoted from the *Schmerber* and *Hayden* cases below:

"It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. Boyd v. United States, 116 U.S. 616 [6 S.Ct. 524, 29 L.Ed. 746].

\* \* \* \* \* \*

"In the present case, however, no such problem of application is presented. Not even a shadow of testimonial compulsion upon or enforced communication by the accused was involved either in the extraction or in the chemical analysis." Schmerber v. California, *supra*, 384 U.S. at 763–765, 86 S.Ct. at 1832.

"The items of clothing involved in this case are not 'testimonial' or 'communicative' in nature, and their introduction therefore did not compel respondent to become a witness against himself in violation of the Fifth Amendment. Schmerber v. California, 384 U.S. 757 [86 S.Ct. 1826, 16 L.Ed. 2d 908]. This case thus does not require that we consider whether there are items of evidential value whose very nature precludes them from being the object of a reasonable search and seizure." Warden v. Hayden, *supra*, 387 U.S. at 302–303, 87 S. Ct. at 1648.

Turning from this analysis to the facts of this case, we find herein:

1) The subjects of the seizure are not personal communications at all but rather business accounts rendered extraordinary only by the fact that the business is itself illegal.

2) These are not privately recorded and privately held thoughts or descriptions of events, as in the case of a close-

ly held diary,[1] but rather business records of which other persons must have knowledge.

Further, the *Hayden* Court overruled the "mere evidence" exclusion of *Gouled* (Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921)) in language which applies a fortiori to instrumentalities of a crime:

"The premise in *Gouled* that government may not seize evidence simply for the purpose of proving crime has likewise been discredited. The requirement that the Government assert in addition some property interest in material it seizes has long been a fiction, obscuring the reality that government has an interest in solving crime. *Schmerber* settled the proposition that it is reasonable, within the terms of the Fourth Amendment, to conduct otherwise permissible searches for the purpose of obtaining evidence which would aid in apprehending and convicting criminals. The requirements of the Fourth Amendment can secure the same protection of privacy whether the search is for 'mere evidence' or for fruits, instrumentalities or contraband. There must, of course, be a nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior. Thus in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction. In so doing, consideration of police purposes will be required. Cf. Kremen v. United States, 353 U.S. 346 [77 S.Ct. 828, 1 L.Ed.2d 876]." Warden v. Hayden, 387 U.S. 294, 306–307, 87 S.

Ct. 1642, 1649, 18 L.Ed.2d 782 (1967). (Footnote omitted.)

In summary we feel that appellant was not "compelled" to produce these papers in violation of the Fifth Amendment;· that the papers are not communicative in nature; that the papers are business records rather than personal and private writings; and that they are on their face instrumentalities of the crime with which appellant is charged. So viewed, they are subject to seizure under Fourth Amendment search warrant procedures and having been so seized, should not have been suppressed.

The judgment of the District Court is vacated and the case is remanded for further proceedings consistent with this opinion.

---

1. We note that the Tentative Draft of the Model Code of Pre-Arraignment Procedures would provide:

"[T]hings subject to search and seizure * * * shall not include personal diaries, letters, or other private writings or recordings, made solely for personal use or communication to a person occupying a family, personal, or confidential relationship other than a relationship in criminal enterprise, unless such things have served or are serving a substantial purpose in furtherance of a criminal enterprise." Model Code of Pre-Arraignment Procedure § SS1.03 (2) (Tent. Draft No. 4, 1971).