**Wendell L. SHAFFER and Marjorie M. Shaffer, Plaintiffs,**

**v.**

**Robert C. WILSON, Special Agent of the Internal Revenue Service, et al., Defendants.**

**Civ. A. No. C–5039.**

United States District Court,
D. Colorado.

Oct. 22, 1974.

Drexler & Wald, Professional Co., by Leslie H. Wald, Denver, Colo., for plaintiffs.

James L. Treece, U. S. Atty., Denver, Colo., for defendants.

## OPINION AND ORDER

CHILSON, District Judge.

From the complaint and affidavits filed herein, it appears that the Plaintiff Wendell L. Shaffer, in October 1971, was a dentist who for several years had been practicing in Colorado Springs, Colorado. The other Plaintiff, Marjorie M. Shaffer, was his wife who assisted him in the conduct of his office. On October 21, 1971, a search warrant was issued by the United States Magistrate in Denver, authorizing the Defendants, Wilson and Bachman and other agents of the Intelligence Division, to search the place of business of Dr. Shaffer. On October 22, 1971, the search was made and a large number of documents were removed from the Plaintiff's office by the Defendants.

On May 24, 1973, this action was instituted, pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure which provides for a motion for return of property and to suppress evidence obtained by an unlawful search and seizure, and also pursuant to 28 U.S.C. § 1331. (Federal question). The complaint prays for a return to the Plaintiffs of the originals and all copies of the items seized; an injunction prohibiting the United States Attorney from using the seized material or any information derived from it for prosecution of Dr. Shaffer, and the suppression of the use of the seized material or any information derived from it in any proceeding for the determination of Plaintiff's tax liabilities.

Additionally, Plaintiffs pray for money damages in the amount of $12,000 from each of the named Defendants.

Upon application for a preliminary injunction, this Court enjoined the use of the seized material by Defendants and ordered it suppressed until further order of the Court. The Court then fixed a time for the parties to file affidavits and briefs in support of their respective positions.

Both Plaintiffs and Defendants have moved for summary judgment, alleging that there is no genuine issue of material fact involved and have supported their motions by appropriate briefs.

The Court determines that there is no genuine issue of material fact to be determined in order for the Court to determine the claims of the parties upon the merits.

Defendant Wilson's affidavit in support of his application for a search warrant set forth his belief that the items to be seized would support a charge that Plaintiffs are in violation of 26 U.S.C. § 7201 and § 7206(1), tax evasion and filing false or fraudulent tax statments for the years 1966–70. Attached to Defendant Wilson's affidavit are affidavits of persons employed by Plaintiffs during various times between 1964 and 1970. These affidavits support Defendant Wilson's belief that Plaintiffs failed to include certain income in their tax returns. Throughout there are references to a dual bookkeeping system including a document called a "cheat book" in which it is alleged Plaintiff recorded payments received which were not included in Plaintiffs' tax returns.

Jurisdiction for Plaintiffs' claim for injunctive relief is alleged under Fed.R. Crim.Pro. 41(e) and 28 U.S.C. § 1331, and is apparently unchallenged by Defendants, although they deny that this is an appropriate case for invoking the

Court's equity powers. Jurisdiction for Plaintiffs' claim for monetary damages is properly based on Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). See also, United States ex rel. Moore v. Koelzer, 457 F.2d 892 (3d Cir. 1972).

The question of whether the seizure of personal financial books and records pursuant to an apparently valid search warrant violates the Fifth Amendment privilege against compulsory self-incrimination has a long history. A short review of this history will place the question in its proper perspective.

The United States Supreme Court first had occasion to consider the question in Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). In that case the District Court ordered the defendant to produce an invoice that would allegedly establish his violation of the import duty statute and result in the forfeiture of illegally imported goods. The order to produce was issued pursuant to a statute, Act of June 22, 1874, § 5, 18 Stat. 187, which provided that should the defendant fail to produce the requested document, the allegations as to what the document would prove would be taken as confessed. Boyd v. United States, 116 U.S. at 620, 6 S.Ct. 524. Defendant complied with the order under protest, and later challenged the use of the invoice on Fifth Amendment grounds. In this context Justice Bradley characterized the issue before the Court as follows:

> The principal question . . . remains to be considered. Is a search and seizure, or, what is equivalent thereto, a compulsory production of a man's private papers, to be used in evidence against him in a proceeding to forfeit his property for alleged fraud against the revenues laws—is such a proceeding for such a purpose an *unreasonable* search and seizure' within the meaning of the Fourth Amendment of the Constitution? or, is it a legitimate proceeding?

Boyd v. United States, 116 U.S. at 622, 6 S.Ct. at 528. Although this case arose in the context of an order to produce, the Court was of the opinion that this was equivalent to a search and seizure, Boyd v. United States, 116 U.S. at 634–635, 6 S.Ct. 524, and proceeded to analyse the situation in Fourth Amendment terms.

■■ As background, the Court recognized that certain items to which the government is entitled have always been subject to search and seizure. Thus the seizure of stolen goods, and goods forfeited for breach of the revenue laws, or concealed to avoid payment of duties have always been seizable. Likewise, the government has always been permitted to search records required to be kept by the revenue laws and to search for and seize articles the possession of which is illegal. Boyd v. United States, 116 U.S. 623–624, 6 S.Ct. 524. However, the Court observed that:

> The search for and seizure of stolen or forfeited goods, or goods liable to duties and concealed to avoid the payment thereof, are totally different from a search for and seizure of a man's private books and papers for the purpose of obtaining information therein contained, or of using them as evidence against him. . . . In the one case, the government is entitled to the possession of the property; in the other it is not.

Boyd v. United States, 116 U.S. at 623, 6 S.Ct. at 528.

Justice Bradley continued with a discussion of the historical development of the Fourth Amendment. He explained in detail that the primary reason for the strict requirements of the Fourth Amendment was a reaction by the Founders against the common-law writs of assistance, or "general warrants," which were used to harrass and convict persons critical of the Crown. These general warrants were judicially invalidated in Entick v. Carrington, 19 How. St.Tr. 1029 (1765), a case involving a search for evidence of seditious libel.

Lord Camden's analysis was based on what would later become Fifth Amendment concerns:

'It is very certain that the law obligeth no man to accuse himself, because the necessary means of compelling self-accusation, falling upon the innocent as well as the guilty, would be both cruel and unjust; and it would seem, that search for evidence is disallowed upon the same principle . . . .

'. . . the warrant to seize and carry away the party's papers in the case of seditious libel is illegal and void.'

Boyd v. United States, 116 U.S. at 629, 6 S.Ct. at 532.

With the *Entick* case as support, the Court stated its famous dictum concerning the "intimate relation" between the Fourth and Fifth Amendments:

The principles laid down in this opinion [Entick v. Carrington] affect the very essence of constitutional liberty and security. . . . It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offence; but it is the invasion of his indefeasible right of personal security, personal liberty, and private property, where that right has never been forfeited by his conviction of some public offence,—it is the invasion of this sacred right which underlies and constitutes the essence of Lord Camden's judgment. Breaking into a house and opening boxes and drawers are circumstances of aggravation; *but any forcible and compulsory extortion of a man's own testimony, or of his private papers to be used as evidence to convict him of crime, or forfeit his goods, is within the condemnation of that judgment*. In this regard the Fourth and Fifth Amendments run almost into each other. (Emphasis added)

Boyd v. United States, 116 U.S. at 630, 6 S.Ct. at 532. The Court thus *held* that the use of the order to produce in this case amounted to compulsory production of testimonial evidence forbidden by the Fifth Amendment. The Court's *dictum,* however, broadens its holding to include testimonial evidence obtained by a search warrant. Justice Miller recognized this anomoly in his concurring opinion. While he agreed that the use of the order to produce was a Fifth Amendment violation, he took care to point out that an order to produce is not a search and seizure within the Fourth Amendment.

If the mere service of a notice to produce a paper to be used as evidence, which the party can obey or not as he chooses, is a search, then a change has taken place in the meaning of words, which has not come within my reading, and which I think was unknown at the time the Constitution was made.

Boyd v. United States, 116 U.S. at 641, 6 S.Ct. at 538.

The *Boyd* decision is the source of the "mere evidence" rule, which provided that the search for and seizure of "mere evidence" of crime, particularly the personal books and papers of the defendant, was unconstitutional as a result of the "intimate relation" between the Fourth and Fifth Amendments.

Professor Wigmore vigorously criticized the *Boyd* rule. He distinguished the Fourth and Fifth Amendments as having been adopted for different purposes. The Fifth Amendment should not be employed in an analysis of a search and seizure permitted by a Fourth Amendment warrant. In the case of a search and seizure pursuant to a validly authorized warrant, the suspect is "not required to act testimonially—he is not required to act at all, or even to be present when the evidence is obtained. Thus the reasons for the [5th Amendment] privilege do not apply." 8 Wigmore, Evidence § 2264, p. 384 (McNaughton rev.1964). The proper treatment of a required production of documents is explained in 8 Wigmore,

Evidence § 2264, pp. 379–80 (McNaughton rev.1964):

> (1) . . . [T]he production of *documents* or *chattels* by a person . . . in response to a subpoena or to a motion to order production or to other form of *process relying on his moral responsibility for truthtelling,* may be refused under the protection of the [5th Amendment] privilege. This is universally conceded. . . . It is the witnesses' assurance, compelled as an incident of the process, that the articles produced are the ones demanded [which is the compelled testimonial act]. No meaningful distinction can be drawn between a communication necessarily implied by legally compelled conduct and one authenticating the articles expressly made under compulsion in court. . . .
>
> (2) Furthermore, it follows that documents or chattels obtained from the person's control *without* the use of process relying on his truthtelling are *not* within the scope of the privilege. As Mr. Justice Holmes said [in Johnson v. United States, 228 U.S. 457, 458 (1913)], 'A party is privileged from producing the evidence but not from its production. (Emphasis in original)

Professor Wigmore thus believed that there is no compulsion, in the Fifth Amendment sense, attendant to the search for and seizure of documents pursuant to a warrant. Any implications to the contrary derived from the *Boyd* dictum, *supra,* are merely the product of confusion generated by that decision. See 8 Wigmore, Evidence § 2264, pp. 381–84 n. 4 (McNaughton rev.1964) for a detailed discussion of the *Boyd* case. See also, Note, 6 Ga.L.Rev. 399 (1972).

In Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921), the Court again considered the question presented in *Boyd,* but in different circumstances. In *Gouled* the defendants were charged with conspiracy to defraud the United States and with mail fraud. The case involved the admissibility of two types of documents in the prosecution. The first document considered was taken by a government agent from the office of one of the defendants by stealth without the defendant's knowlege and without a warrant. The Court held this document to be inadmissible since it was obtained by an illegal warrantless search and seizure, and such a search and seizure, followed by the use of the document at trial amounts to a violation of the defendant's privilege against compulsory self-incrimination under the Fifth Amendment. Gouled v. United States, 255 U.S. 298, 306, 41 S.Ct. 261, 65 L.Ed. 647 (1921).

The second group of documents was obtained pursuant to apparently valid search warrants. The Court began its analysis of these documents by reiterating that the government may not use a warrant to search a defendant's house or office for mere evidence of crime without first asserting a superior property right to the articles sought. Boyd v. United States, *supra,* 116 U.S. at 623–624, 6 S.Ct. 524; Gouled v. United States, 255 U.S. at 309, 41 S.Ct. 261. However, the Court then departed from the *Boyd* rationale and held that books and papers enjoy no greater protection than any other type of evidence.

> There is no special sanctity in papers, as distinguished from other forms of property, to render them immune from search and seizure, if only they fall within the scope of the principles of the cases in which other property may be seized, and if they be adequately described in the affidavit and warrant.

Gouled v. United States, 255 U.S. at 309, 41 S.Ct. at 265.

Thus, *Gouled* appears to have overruled *Boyd* insofar as *Boyd* ascribed any special significance to books and papers as the objects of a search and seizure. *Gouled* held (1) that the admission of testimonial evidence obtained by an *unlawful* search and seizure amounts to

compulsory self-incrimination and will not be allowed; and (2) searches for and seizures of items to be used as mere evidence of crime would not be allowed unless the government could assert some superior right to the property. Evidence to which the government may assert a superior property right, and which is therefore subject to search and seizure includes the following: stolen goods and contraband, Boyd v. United States, 116 U.S. 616, 623–624, 6 S.Ct. 524 (1886); records required to be kept, compare Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948) with Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); and items fairly characterized as instrumentalities of crime, Marron v. United States, 275 U.S. 192, 198–199, 48 S.Ct. 74, 72 L.Ed. 231 (1927); Go-Bart Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); Gottone v. United States, 345 F.2d 165 (10th Cir.), cert. denied, 382 U.S. 901, 86 S.Ct. 234, 15 L.Ed.2d 155 (1965); United States v. Guido, 251 F.2d 1 (7th Cir.), cert. denied, 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 843 (1958).

The first branch of the *Gouled* holding remains good law. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) and its progeny. The second branch, the distinction between mere evidence and property as to which the government can assert a superior property interest, however, has been expressly overruled in Warden v. Hayden, 387 U.S. 294, 300–310, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). The Court explained:

> The survival of the *Gouled* distinction is attributable more to chance than considered judgment. Legislation has helped to perpetuate it. Thus, Congress has never authorized the issuance of search warrants for the seizure of mere evidence of crime . . . . Even in the Espionage Act of 1917, where Congress for the first time granted general authority for the issuance of search warrants, the authority was limited to fruits of crime, instrumentalities and certain contraband. 40 Stat. 228. *Gouled* concluded, needlessly it appears, that the Constitution virtually limited searches and seizures to these categories.[1]

> 1. "Significantly, Entick v. Carrington itself has not been read by the English courts as making unlawful the seizure of all papers for use as evidence. See Dillon v. O'Brien, 20 L.R.Ir. 300; Elias v. Pasmore, [1934] 2 K.B. 164." (Court's footnote).

Warden v. Hayden, 387 U.S. at 308, 87 S.Ct. at 1651.

The Court went on to reject the mere evidence rule, explaining that the proper concern is not with the characterization of the particular property seized as mere evidence, instrumentalities, fruits or contraband, but with the extent to which the individual's privacy is compromised in obtaining the evidence. The Fourth Amendment itself is sufficient to secure adequate protection of the individual's privacy. Assuming that there is a "nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior," Warden v. Hayden, 387 U.S. at 307, 87 S.Ct. 1642, 1650, invasions of privacy pursuant to a properly obtained search warrant

> are nevertheless made after fulfilling the probable cause and particularity requirements of the Fourth Amendment and after the intervention of 'a neutral and detached magistrate. . . .' Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 [(1948)]. The Fourth Amendment allows intrusions upon privacy under these circumstances, and there is no viable reason to distinguish intrusions to secure 'mere evidence' from intrusions to secure fruits, instrumentalities, or contraband.

Warden v. Hayden, 387 U.S. at 309–310, 87 S.Ct. at 1651. The Supreme Court's repudiation of the mere evidence rule is now reflected in 18 U.S.C. § 3103a and Fed.R.Crim.Pro. 41(b).

*Warden* involved the search for and seizure of clothing incident to the defendant's arrest. The Court was careful to point out, therefore, that its holding must be read in light of its facts and that:

This case thus does not require that we consider whether there are items of evidential value whose very nature precludes them from being the object of a reasonable search and seizure.

*Warden v. Hayden,* 387 U.S. at 303, 87 S.Ct. at 1648.

However, reading *Warden* in light of *Gouled's* statement that "[t]here is no special sanctity in papers, as distinguished from other forms of property," *Gouled v. United States,* 255 U.S. at 309, 41 S.Ct. at 265, it is clear that the Court's caveat is intended to refer not to the particular nature of the items to be seized, but instead to a narrow class of property which is intimately connected to vitally protected individual privacy rights. See e. g., *Roe v. Wade,* 410 U.S. 113, 152–153, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and cases cited therein. See, Comment, 6 Loyola of L.A.L.Rev. 274, 300–304 (1973); Model Code of Pre-Arraignment Procedure § SS1.03(2) (Tent.Draft No. 4, 1971) (personal diaries, letters or other private writings made solely for personal use or communications to a person occupying family or privileged relationship, other than in furtherance of crime, may not be subject of search and seizure).

With this history as a basis, the various Circuit Courts of Appeal have considered the issue and arrived at no less than four different conclusions.

(1) *United States v. Bennett,* 409 F. 2d 888 (2d Cir. 1969), cert. denied sub nom *Thomas v. United States,* 402 U.S. 984, 91 S.Ct. 1670, 29 L.Ed.2d 149 (1971), involved the search, incident to arrest, of the defendant's apartment. The defendant was accused of conspiracy to import and distribute narcotics in violation of 21 U.S.C. §§ 173–174. The search produced, *inter alia,* a letter which incriminated the defendants. The Court upheld the seizure of the letter relying largely on *Warden v. Hayden, supra.*

We find no distinction of constitutional dimensions between the seizure of Hayden's clothing and of Egan's letter. While the demise of the 'mere evidence' rule may well require the development of some new restriction on allowable search and seizure in its place, we suggest with deference that an approach geared to the objective of the Fourth Amendment to secure privacy would seem more promising than one based on the testimonial character of what is seized. . . . Despite Mr. Justice Bradley's dicta in *Boyd* . . . now largely repudiated by *Hayden,* . . . the Fourth Amendment does not protect broadly against the seizure of things whose compulsory production would be forbidden by the Fifth. . . . [N]o one could have seriously asserted, even before *Hayden,* that the Fourth Amendment protected such papers against seizure pursuant to a search warrant or a reasonable search incident to a lawful arrest.

*United States v. Bennett,* 409 F.2d at 896–897. See also, *United States v. Scharfman,* 448 F.2d 1352 (2d Cir. 1971), cert. denied sub nom. *Scharfman v. United States,* 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972). Thus the Court took the position that no item is inherently unseizable, pursuant to a valid warrant or incident to a lawful arrest, unless its seizure compromises the defendant's Fourth Amendment rights. Judge Friendly explained this proposition relying on Judge Learned Hand's opinion in *United States v. Poller,* 43 F.2d 911, 914 (2d Cir. 1930) as follows:

Judge Hand's . . . statements afford the best clue to the formulation of any new limitation that we have been able to conceive. As he observed, the vice lies in the unlimited search. The reason why we shrink from allowing a personal diary to be the object of a search is that the entire diary must be read to discover whether there are incriminating entries; most of us

would feel rather differently with respect to a 'diary' whose cover page bore the title 'Robberies I Have Performed.' Similarly the abhorrence generally felt with respect to 'rummaging' through the contents of a desk to find an incriminating letter would not exist in the same measure if the letter were lying in plain view.

United States v. Bennett, 409 F.2d at 897.

(2) Hill v. Philpott, 445 F.2d 144 (7th Cir.), cert. denied, 404 U.S. 991, 92 S.Ct. 533, 30 L.Ed.2d 5 (1971), and Vonder-Ahe v. Howland, 31 A.F.T.R. 73–1075 (9th Cir. 1973) are remarkably similar to the case under consideration. Both cases held that personal books and records of suspected tax evaders cannot be obtained by the use of search warrants because of the Fifth Amendment prohibition against compulsory self-incrimination. Defendants summarize the situation in their Memorandum at p. 4 as follows:

> Stated as candidly as possible, the defendants believe that *VonderAhe* and *Hill* are factually indistinguishable from this case. Indeed the operative facts in the three cases are eerily similar. It follows, therefore, and the defendants concede that if this Court elects to follow the law of the Seventh and Ninth Circuits it should rule for the plaintiffs with respect to suppression of the seized evidence.

> The defendants believe, however, that *Hill* and *VonderAhe* are legally incorrect and should not be followed.

In *Hill, supra,* the Seventh Circuit upheld the defendant's motion to suppress the seized papers and documents on Fourth and Fifth Amendment grounds. The Court rejected Wigmore's analysis of the two Amendments, *supra,* and relied on *Boyd, Gouled* and *Warden, supra,* and Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), for the proposition that papers and documents which are not subject to production by subpoena on Fifth Amendment grounds, similarly cannot be the objects of a search and seizure with or without a warrant. Hill v. Philpott, 445 F.2d at 146–149. Thus the Court held that the use of a search warrant to obtain testimonial evidence is equivalent to compulsion within the Fifth Amendment. Hill v. Philpott, 445 F.2d at 148–149. But see Romanelli v. Commissioner, 466 F.2d 872, 877–878 n. 9 (7th Cir. 1972) (*Hill* inapplicable where papers and documents seized were "paraphernalia of illegal gambling" and instrumentalities of crime.).

Judge Fairchild, dissenting in *Hill,* read the caveat in Warden v. Hayden, *supra,* as intended only to protect "a class of papers so intimately confidential and so much a part of personhood that they ought to enjoy a superlative privacy." Hill v. Philpott, 445 F.2d at 150. He did not feel that the papers involved in *Hill* were within this special class. In this respect Judge Fairchild agreed with the analysis of Warden v. Hayden, *supra.*

VonderAhe v. Howland, *supra,* followed the reasoning of *Hill* with one addition. While *Hill* found the use of a search warrant to be the equivalent of compulsion due to "the realities of trial," Hill v. Philpott, 445 F.2d at 149, *Vonder-Ahe* found compulsion based on speculation about the practical consequences of administering search warrants:

> One need ask only what would happen if the addressee of a warrant refused to allow the search to be conducted to appreciate the magnitude of compulsion produced by a search warrant. Without the slightest hesitation his doors would be broken down, he would be placed under arrest, and the desired material would be seized. How the imminence of such force can be considered as anything other than compulsion escapes us.

Vonder Ahe v. Howland, 31 A.F.T.R. at 73–1079.

(3) United States v. Blank, 459 F.2d 383 (6th Cir.), cert. denied, 409 U.S. 887, 93 S.Ct. 111, 34 L.Ed.2d 143 (1972), involved the search for and seizure of books and records of an alleged horse-book gambling business as defined

in 18 U.S.C. § 1955. The search and seizure was conducted pursuant to an admittedly valid warrant. On the defendant's challenge to the search and seizure, the 6th Circuit considered and expressly rejected the rationale of Hill v. Philpott, *supra*. United States v. Blank, 459 F.2d at 384–385. The Court accepted Professor Wigmore's view that there is no compulsion, in the Fifth Amendment sense, attendant to a search and seizure conducted in accordance with a validly obtained search warrant. See Wigmore, Evidence § 2264 (McNaughton rev. 1964), *supra*. The Court agreed with Judge Fairchild's dissenting view in *Hill*, that the caveat in Warden v. Hayden, *supra*, applies only to items intimately related to the defendant's Fourth Amendment privacy rights such as is the case with a "closely held diary." United States v. Blank, 459 F.2d at 386–387 (also citing Model Code of Pre-Arraignment Procedure § SS1.03(2), *supra*.) Since the papers and documents were seized without compulsion, were business rather than personal records, and were also instrumentalities of the alleged crime involved, the Court reversed the District Court and held the records to be admissible as evidence. United States v. Blank, 459 F.2d at 387. Accord, United States v. Curreri, 368 F. Supp. 757, 765 (D.Md.1973).

(4) Taylor v. State of Minnesota, 466 F.2d 1119 (8th Cir. 1972), involved the seizure of an incriminating memorandum from defendant's apartment. The Court denied defendant's claim that the seizure violated his Fifth Amendment rights because the evidence did not "show the memorandum to have been the product of any coercion." Taylor v. State of Minnesota, 466 F.2d at 1121. See Hoffa v. United States, 385 U.S. 293, 303–304, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); United States v. Hanon, 428 F.2d 101, 107 (8th Cir. 1970).

■ A consideration of all of these cases leads to the conclusion that the search for and seizure of the books and records in this case was not improper.

Notwithstanding the rationale advanced by *Hill* and *VonderAhe, supra,* it appears that there was no compulsion, in the Fifth Amendment sense, attendant to the search and seizure in this case. The requirements of the Fourth Amendment for obtaining a warrant were complied with in all respects, and having been met, the requirements were sufficient to protect Plaintiffs' rights. See Warden v. Hayden, *supra*, 387 U.S. at 307–310, 87 S.Ct. 1642. This view of the situation is consistent with the approaches taken in United States v. Bennett, United States v. Blank, Taylor v. State of Minnesota, Wigmore, and the law review commentaries noted *supra*.

■ Moreover, the articles seized by defendants were business records rather than private papers which are "so much a part of personhood that they ought to enjoy a superlative privacy." Hill v. Philpott, 445 F.2d at 150 (dissenting opinion of Judge Fairchild). The affidavits appended to Defendant Wilson's application for a search warrant reveal that at least Plaintiff's employees and former employees had knowledge of these records. Thus, the items seized were not private, but rather "business records of which other persons must have knowledge." United States v. Blank, 459 F.2d at 387.

■ Plaintiffs' second claim, for damages resulting from an unconstitutional search and seizure, must fall with the first claim. Since the search and seizure cannot be said to have been improper, Plaintiffs are not entitled to damages.

■ A fair reading of the search warrant and the inventory of items taken from Plaintiff's office (see Defendant Wilson's affidavit) reveals that there was a reasonable "nexus . . . between the item . . . seized and [the] criminal behavior" alleged. Warden v. Hayden, *supra*, 387 U.S. at 307, 87 S.Ct. at 1650.

It is therefore ordered that the Defendants' motion for summary judgment be and the same is hereby granted; the cross-motion of the Plaintiffs for sum-

mary judgment is hereby denied, and judgment shall enter in favor of the Defendants against the Plaintiffs for the Defendants' costs to be taxed by the Clerk of the Court upon the filing of a bill of costs.

It is further ordered that the preliminary injunction entered by the Court on July 5, 1973, is hereby dissolved.

Final judgment shall be entered accordingly.